**In re BASIN RESOURCES CORPORATION,**
Debtor.

**John James JENKINS, Chapter 7 Trustee for Basin Resources Corporation, Plaintiff,**

v.

**Marc TOMLINSON, Vearl Sneed, Mats Larsson, and Larry Neese, Defendants.**

Bankruptcy No. 392–32480–HCA–7.
Adv. No. 394–3463.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Jan. 17, 1996.

Joel Held, Mankoff, Hill, Held & Metzger, Dallas, Texas, for Defendant Vearl Sneed.

James A. Walters, James A. Walters, P.C., Dallas, Texas, for Plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

HAROLD C. ABRAMSON, Bankruptcy Judge.

Defendants Marc Tomlinson, Vearl Sneed, Mats Larsson, and Larry Neese (collectively, "Defendants") filed proofs of claim in the bankruptcy case of Basin Resources Corporation ("Debtor"). John James Jenkins, Chapter 7 Trustee ("Trustee") for the Debtor, filed this proceeding to subordinate the claims of these Defendants, pursuant to 11 U.S.C. § 510. These findings of fact and conclusions of law concern only the claim of Defendant Vearl Sneed ("Sneed"). This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) & –(O).

The Court previously disposed of certain issues regarding the Trustee's causes of action against Sneed in ruling on Sneed's motion for summary judgment. On April 24, 1995, the Court entered a memorandum opinion and an order granting Sneed's motion in part and denying it in part. *Jenkins v. Tomlinson (In re Basin Resources Corp.),* 182 B.R. 489 (Bankr.N.D.Tex.1995). Although the Court granted Sneed's motion with regard to the Trustee's claims of accord and satisfaction and subordination pursuant to 11 U.S.C. § 510(c), the Court refused to grant summary judgment as to the Trustee's request for subordination of Sneed's claim pursuant to 11 U.S.C. § 510(b). *Id.* at 493. Section 510(b) provides as follows:

> For the purpose of distribution under this title, a claim arising from rescission of a purchase or sale of a security of the debtor or of an affiliate of the debtor, for damages arising from the purchase or sale of such a security, or for reimbursement or contribution allowed under section 502 on account of such a claim, shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock.

11 U.S.C. § 510(b). In the April 24th memorandum opinion, the Court found that Sneed had judicially admitted that his claim is one arising from rescission of a purchase or sale of a security or for damages arising from the purchase or sale of such a security. *Jenkins,* 182 B.R. at 493. The Court found that there was an issue of fact as to whether or not the security purchased by Sneed was the security of an "affiliate of the debtor." *Id.* At an evidentiary hearing on October 25, 1995, the Trustee and Defendant Sneed presented evidence on this issue.

After considering the evidence, testimony, and the documents offered by the parties at the October 25th hearing, the Court made oral findings of fact and conclusions of law, pursuant to Federal Rule of Bankruptcy Procedure 7052. The Court has prepared these written findings of fact and conclusions of law to reflect and supplement the Court's oral findings of fact. As noted above, the Court's focus is on § 510(b) of the Bankruptcy Code, 11 U.S.C. § 101, *et seq.*

### FINDINGS OF FACT

Sneed participated in a number of joint ventures with the Debtor, the purpose of which was to search for oil and gas. The language in the offering memorandum or Private Placement Memorandum ("Memorandum") for Basin–Brooks No. 1 Joint Venture, and more specifically the Amended Agreement of Joint Venture ("Agreement"), which is attached as Exhibit A to the Memorandum, provides that the Debtor is the joint venture manager of the joint venture. There is also language in the Agreement that no joint venturer who is not a manager "shall take any part in, or interfere in any manner with, the conduct or control of the business of the Joint Venture or have any right or authority to act for or by the Joint Venture." Agreement at ¶ 4.5. Paragraph 4.1 of the Agreement provides that "[t]he Joint Venture Manager shall have full, exclusive and complete charge of all affairs of the Joint Venture and of the management and control of the Joint Venture," subject only to certain limitations as to doing things against the interests of the joint venture. *See* Agreement at ¶ 4.4 (listing acts that the joint venture manager shall not do).

From the testimony of Ron Tharp, the Court finds that the properties of the joint

ventures were turned over to the Debtor as the joint venture manager. The evidence and the documents produced indicate the factual background as to the involvement of Sneed and the structure of the partnership that existed when he became an investor. The facts as to the governance of the Basin–Brooks No. 1 Joint Venture were the same for all the joint ventures, as each was operated in the same fashion as the Basin–Brooks No. 1 Joint Venture, per the testimony of Mr. Tharp.

In paragraph 57 of the Complaint filed by Sneed in United States District Court ("District Court Complaint"),[1] in which Sneed accused the Debtor of securities law violations, Sneed alleges that the Debtor was a promoter, issuer, and *manager* of the joint venture interests. In paragraph 80 of the District Court Complaint, Sneed contends that the defendants, which include the Debtor, owe an accounting for the *operations* of the joint ventures.

## CONCLUSIONS OF LAW

■ As noted above, the only determination before the Court is whether or not Sneed's claim should be subordinated pursuant to 11 U.S.C. § 510(b). In making this decision, the Court is guided by the plain words of the statute and the policy consideration underlying § 510(b), which is discussed in the following quote:

> [R]ules of allocation in bankruptcy should be predicated on allocation of risk. The two risks to be considered are the risk of insolvency of the debtor and the risk of an unlawful issuance of securities. While both security holders and general creditors assume the risk of insolvency, [commentators] Slain and Kripke conclude that the

risk of illegality in securities issuance should be borne by those investing in securities and not by general creditors.

*In re American Solar King Corp.*, 90 B.R. 808, 818 (Bankr.W.D.Tex.1988), quoting H.R.Rep. No. 595, 95th Cong., 1st Sess. 195 (1977) U.S.Code Cong. & Admin.News 1978, pp. 5787, 5963, 6155–6156.[2] What is before the Court in this case is an unfortunate situation in which people such as Defendant Sneed made investments. Regardless, the Court does not have discretion in subordinating claims pursuant to 11 U.S.C. § 510(b)—if the plaintiff shows the elements of § 510(b), then the application of the section is mandatory. *See* 11 U.S.C. § 510(b) (providing that "a claim . . . shall be subordinated").

■ The only issue in dispute at the evidentiary hearing was whether or not the securities purchased by Sneed were securities of an "affiliate of the debtor." The definition of "affiliate" for purposes of the Bankruptcy Code is set out in § 101(2), and the parties have focused the Court's attention on § 101(2)(C), which provides that an affiliate includes a "person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor."[3] The latter language is more apropos to what is before the Court in this case. The persons are the joint ventures set up by the Debtor. The oil and gas properties of the ventures were to be substantially operated under operating agreements with the Debtor. Sneed knew or should have known of the structure of the ventures and the operations that were envisioned when he invested.

---

1. The Court explained in its April 24th memorandum opinion that Sneed filed a lawsuit in the United States District Court for the Northern District of Texas against the Debtor and others on November 12, 1991. *Jenkins*, 182 B.R. at 490. In the District Court Complaint, Sneed alleged that the Debtor had, among other things, violated federal securities law by failing to register the joint venture interests as securities. Sneed incorporated the District Court Complaint into the proof of claim that he filed in the Debtor's bankruptcy case. *Id.* The Court found that, by attaching the District Court Complaint to his proof of claim, Sneed had judicially admitted that his claim is one arising from rescission of a purchase or sale of a security. *Id.* at 493.

2. The House generally adopted this view. H.R.Rep. No. 595 at 196, U.S.Code Cong. & Admin.News 1978, pp. 6156–6157.

3. The Bankruptcy Code defines "person" as an individual, partnership, or corporation with certain exclusions that are not applicable in this case. 11 U.S.C. § 101(41). The Court is not aware of any dispute about this issue.

Partnership law applies to the joint ventures, and that law provides that a partnership is under the majority control of the partners, "subject to any agreement between them." Tex.Rev.Civ.Stat.Ann. art. 6132b, § 18 (Vernon 1970). In this case, the joint venturers agreed upon control of operations such that the Debtor managed the joint ventures as their manager. Upon investing, Sneed knew or should have known from the documents the authority of the Debtor.

In sum, after reviewing the testimony and other evidence, the Court finds that the involvement of Sneed was with affiliates of the Debtor and that his interests are subordinated to the claims of general creditors under § 510(b). Sneed is also bound by his judicial admission because his own pleadings in the United States District Court allege that the Debtor was the manager of the joint venture interests, which is tantamount to alleging that the Debtor was the *operator* of the property of the joint ventures. *See Jenkins,* 182 B.R. at 492–93.

Unfortunately, Sneed fell into this situation in which the Debtor apparently set up the joint ventures, provided them with property, and then made them attractive investments for investors such as Sneed. Regardless, the joint venture agreements provided that substantially all of the property of the joint ventures was to be operated under an operating agreement with the Debtor, and thus they are affiliates of the Debtor pursuant to 11 U.S.C. § 101(2)(C).

■ One other issue bears mention. At the October 25th hearing, counsel for Sneed made an oral motion to amend Sneed's pleadings to add a statute of frauds defense pursuant to Federal Rule of Civil Procedure 15(b), made applicable to these proceedings by Federal Rule of Bankruptcy Procedure 7015. Sneed asserted that the Trustee had not put into evidence a signed operating agreement. The Court denies the motion to amend, as the statute of frauds is irrelevant to the Court's decision. The statute of frauds prevents the *enforcement* of certain contracts unless they are in writing and signed by the person to be charged with the agreement.

Tex.Bus. & Com.Code Ann. § 26.01 (Vernon 1987). In this case, the Trustee is not attempting to enforce the operating agreement as to Sneed, but is suing to subordinate Sneed's claim for the purposes of a bankruptcy distribution pursuant to 11 U.S.C. § 510(b).[4]

The Court finds that the Trustee has shown all the elements of § 510(b) such that the Trustee shall have judgment for the subordination of Sneed's claim. All findings of fact that could be construed as conclusions of law shall be so construed and vice versa. All relief not expressly granted is denied. The Court will enter a judgment consistent with these findings of fact and conclusions of law.

---

4. In fact, the Trustee is not trying to enforce *any* contract against Sneed.